UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTINA C.,<br><br>                  Plaintiff,<br>     v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Case No. 3:24-cv-05479-TLF<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB") Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

On September 9, 2019 plaintiff filed an application for DIB alleging a disability onset date of August 1, 2015. AR 491-95. Her claim was denied initially (AR 351) and upon reconsideration (AR 404). On October 12, 2021 a hearing was held in front of ALJ Anthony Smereka. AR 307-45. On November 5, 2021 ALJ Smereka issued an unfavorable decision finding plaintiff not to be disabled. AR 290-301. Plaintiff filed an appeal in this Court and on June 8, 2023, the Honorable David W. Christel granted the parties' stipulated motion for remand (AR 1484-87). AR 1488-90.

On February 6, 2024 a second hearing was held in front of ALJ Richard Geib. AR 1438-56. On April 2, 2024 ALJ Geib issued an unfavorable decision finding plaintiff not to be disabled. AR 1418-30. The appeals council denied the request for review and plaintiff filed this appeal.

Plaintiff's date last insured was March 31, 2020. AR 1420. The ALJ determined plaintiff engaged in substantial gainful activity from January 1, 2017 to December 31, 2018 but did not engage in substantial gainful activity for the remaining period. AR 1420-21.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred in failing to account for the time that plaintiff would be off task due to hallucinations. Dkt. 8. Specifically, plaintiff alleges that the ALJ erred in evaluating plaintiff's allegations regarding her hallucinations and in evaluating the medical evidence, especially the opinion of Dr. Kristin Price, Ph.D.

The ALJ is responsible for determining a plaintiff's RFC, which is the most a claimant can do despite existing limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a). The RFC must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 690 (9th Cir. 2009).

**1. Whether Plaintiff's RFC is Supported by the Record, With Respect to the Impact of Plaintiff's Hallucinations**

Plaintiff argues that the RFC was erroneous, because the ALJ did not include any work-related limitation to reflect the medical assessment and plaintiff's statements of the impact of plaintiff's hallucinations. Dkt. 8, Opening Brief, at 2-16.

The ALJ determined that through the date last insured, plaintiff had the following severe impairments: "schizoaffective disorder with depression, anxiety, and post-traumatic stress disorder (PTSD), borderline personality disorder, and obesity." AR 1421.  The ALJ determined plaintiff had the residual functional capacity ("RFC") to work at all exertional levels with the following nonexertional limitations:

> With no exposure to work hazards such as unprotected heights and dangerous moving machinery. The claimant can understand remember and carry out simple and detailed instructions that can be learned in 30 days or less and can have occasional contact with the general public and coworkers. She can perform work involving occasional changes in the work routine and setting.

AR 1424.

The ALJ determined plaintiff could perform the following work: janitor (DOT 381.687-018, medium, SVP 2), with 750,000 jobs in the national economy; hand packager (DOT 920.587-018, medium, SVP 2), with 143,000 jobs in the national economy; automobile detailer (DOT 915.687-034, medium, SVP2), with 167,000 jobs in the national economy; an electronics worker (DOT. 726.687-010, light, SVP 2) with 166,000 jobs in the national economy; and a small products assembler II (DOT 739.687-030, light, SVP 2), with 165,000 jobs in the national economy. AR 1429.

### a. Whether the ALJ Erred in Evaluating Medical Evidence

Plaintiff filed the claim on September 9, 2019 so the ALJ applied the 2017 regulations. *See* AR 491. Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under the new regulations,

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

4

an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.*

On June 17, 2020, Dr. Price conducted a psychiatric assessment of plaintiff. AR 974-77. She diagnosed plaintiff with Major Depression, recurrent (with possible psychotic features) vs. Bipolar II Disorder, and Anxiety Disorder, unspecified. She opined that plaintiff may have intermittent difficulty maintaining productivity in a work situation due to disruption related to psychiatric symptoms. AR 977. She opined that plaintiff would be able to follow written or verbal instructions, but may need redirection to sustain performance (e.g. a checklist format). She opined that plaintiff would be able to make simple judgments but would not be currently reliable in terms of more complex judgments. She opined that interpersonal skills would be adequate but she would have moderate difficulty in a work situation that requires ongoing interactions with others. *Id*.

The ALJ found Dr. Price's findings to be not persuasive, writing that Dr. Price did not explain how frequent difficulties in maintaining productivity would occur or specify the effect on plaintiff's ability to perform unskilled work. AR 1427. The ALJ also determined that the statement that plaintiff may need redirection to sustain performance was vague and not supported by specific evidence. *Id*.  He also found Dr. Price's opinion regarding moderate difficulty in a work situation that requires ongoing interactions with others was vague because Dr. Price did not specify plaintiff's ability to work around others, only that she would have moderate difficulty with ongoing interactions. *Id*. However, the ALJ explained that this is not entirely inconsistent with the

RFC that she could have occasional interactions. *Id*. The ALJ concluded that the evidence of record including plaintiff's ability to get along with others and improved symptoms with treatment were more consistent with the RFC. *Id*.

Plaintiff argues that the ALJ erred by not providing a reason to reject Dr. Price's finding that plaintiff's dysfunctional episodes do actually occur. Dkt. 8 at 14. Plaintiff contends that the ALJ erred by concluding that Dr. Price's opined limitation that plaintiff needed redirection to sustain performance was vague. *Id*.

A finding that a medical opinion does not contain specific functional limitations, or is otherwise too vague to be useful in making a disability determination, can be a proper reason for discounting that opinion. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination).

Plaintiff contends that the need to redirect an individual working was not vague; however, plaintiff did not provide support from authority for this argument. Dkt. 8 at 14. Plaintiff argues that the limitation would be necessary when plaintiff strays off-task when she experiences visual hallucinations.

Here plaintiff states that "[r]edirection is understandably necessary because of [plaintiff's] psychiatric disturbances described by Dr. Price that directly correspond to plaintiff's inability to stay on task while in a hallucinated state." Dkt. 8 at 14. However, Dr. Price did not link this limitation to the hallucinations plaintiff experienced and did not conclusively state that she would need redirection, but rather stated that she "may" need redirection. *See* AR 977.

The ALJ also concluded that this limitation was not supported by specific evidence. AR 1427. an ALJ need not accept a medical opinion "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here the basis of the limitations opined by Dr. Price regarding the need for redirection is unclear and thus this was a valid reason to reject this limitation.

Plaintiff also argues that the ALJ erred because the ALJ discredited Dr. Price's opinion that plaintiff may have intermittent difficulty maintaining productivity due to disruption related to psychiatric symptoms because Dr. Price did not specify the frequency of such difficulties. Dkt. 8 at 13-14. But the ALJ did not state that no hallucinations happened and did not discredit Dr. Price's opinion on that basis.

The ALJ rejected this limitation because "Dr. Price did not explain how frequent such difficulties would occur or specify the effect on her ability to perform unskilled work." AR 1427. The ALJ did not err; Dr. Price did not opine a specific functional limitation. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ did not err in determining that doctor's report did not opine specific functional limitations where doctor "did not explain how these characteristics precluded work activity.").

The ALJ did not err by not incorporating Dr. Price's opined limitations into the RFC or hypothetical to the vocational expert because they were properly discredited. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009).

**b. Whether the ALJ Erred in Evaluating Plaintiff's Statements About Symptoms and Limitations**

7

Plaintiff argues that the ALJ erred by discounting plaintiff's statements about frequency and intensity of hallucinations, and by failing to incorporate in the RFC any estimate of how much time plaintiff would be off task when she experiences hallucinations. Dkt. 8 at 4-10, 16-18.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Here plaintiff testified at the hearing, on October 12, 2021, that four to five times a week she faces disruptions from symptoms that cause her to grab things like pencils or erasers out of the air because her reality is questionable. AR 312-13. These episodes sometimes last half an hour but most of the time last the whole day. AR 313. She testified that she sometimes hears voices that tell her to do things. AR 314.

The ALJ noted that plaintiff did not seek treatment for hallucinations until January 2020 (AR 831) and did require emergency treatment for these symptoms but exhibited good insight into her condition and was not responding to the hallucinations (AR 1005-06, 1160). AR 1422.

The ALJ also noted that plaintiff's symptoms have improved with medication. AR 1422 (citing 802, 869, 886, 890, 1075, 1180). The ALJ determined that there was no corroboration for the frequency or severity of her hallucinations and her condition has been entirely managed on an outpatient basis. AR 1424. He further noted that most of the records post-dated the date last insured and the evidence prior to the date last insured did not establish a disability. AR 1424. Plaintiff's date last insured was March 31, 2020. AR 1420.

The medical records show plaintiff did not report hallucinations to her treatment providers until 2019. But when she did report, she told the treatment provider that she had been having hallucinations for several years. AR 805.

In September 2014, plaintiff was evaluated by Dr. Samanta Shira, M.D., a psychiatrist. AR 616-617, 683-684. Dr. Shira determined that plaintiff had a major depressive disorder, and prescribed citalopram (Celexa). AR 617. Dr. Samantha Carolla noted in March 2016 that plaintiff "[a]ppears extremely anxious and self conscious, almost apologetic. Tangential rapid speech." AR 681. In April 2016, Dr. Aaron Zabriskie, M.D. evaluated plaintiff and found that she had major depressive disorder and generalized anxiety disorder, and prescribed sertraline (Zoloft). AR 621-622, 675-677. In a follow up appointment in May 2016, PA-C Sara Howard noted that plaintiff stated her symptoms had been gradually improving, she felt 80% better, and the medications she was taking were Zoloft and hydroxyzine (Atarax). AR 623-626, 673-674.

On November 30, 2017, ARNP Kathryn Willits noted that plaintiff was having panic attacks, "describes racing heart, feeling of impending doom, extreme anxiety

9

1   about 3-4x per month." AR 634-635. ARNP Willits reported that plaintiff was taking
2   Clonazepam, sertraline, and hydroxyzine. *Id.*

3         Dr. Rebecca Hoffman, MD noted that plaintiff was having difficulty with certain
4   medications for depression and anxiety, in November 2018; Dr. Hoffman prescribed
5   hydroxyzine, sertraline, and buprorion. AR 733. Dr. Heather de Jesus also evaluated
6   plaintiff in November 2018, and noted that plaintiff reported panic attacks about twice
7   per month and sometimes more frequently during the summer. AR 733-734.

8         On November 22, 2019, plaintiff reported to Dr. Mike Geng-Li Lin, MD that she
9   had been hallucinating for the past several years. AR 805. She told Dr. Lin that she had
10  conversations with the voice, and it occurred about twice a month. *Id.* Dr. Lin
11  recommended that plaintiff should contact her insurance company and obtain approval
12  to see a psychiatrist and a counselor, and plaintiff agreed. AR 807. Dr. Lin diagnosed
13  plaintiff with major depressive disorder, auditory hallucination, and PTSD.

14        In December, 2019, Dr. Alison Herson, MD noted that plaintiff was taking
15  sertraline, bupropion, hydoroxyzine, and lorazepam. There is also a notation by Dr.
16  Herson that plaintiff was having difficulty with financial and logistical access to a
17  psychiatrist and counseling for her mental health symptoms. AR 809-810.

18        On January 29, 2020, CNM Sarah Holt stated that plaintiff reported
19  hallucinations, and that they were occurring a few times per month, she hears voices
20  telling her she is worthless, and she thought Satan was in the mirror but then
21  determined that was not accurate. AR 831.

22        Plaintiff reported she was having difficulties with insurance coverage for mental
23  health treatment. AR 831. In February 2020, Dr. Herson reported that plaintiff went to a

24
25

few counseling appointments, plaintiff continued taking sertraline, bupropion, hydroxyzine, and lorazepam, but was unable to find a psychiatrist due to having problems with Medicaid coverage. AR 869-870. March 15, 2020, Dr. Herson again commented on plaintiff's mental illness: "lots of mental illness: visual and auditory hallucinations, about 2 times per month over the past 3 months and increasing in frequency, systhymia, bipolar 2 major depressive disorder, anxiety, panic, PTSD, history of physical abuse, borderline personality disorder. " AR 823.

In April, 2020, plaintiff reported to Dr. Herson that she was having "multiple episodes weekly of visual and auditory hallucinations." AR 893. *See also*, AR 1009-1013 (PA-C Joy Erickson, documenting plaintiff's reports on April 9, 2020, of multiple episodes each week, visual and auditory hallucinations). Dr. Herson found plaintiff had "major depressive disorder, recurrent episode, mild w psychotic features," "generalized anxiety disorder", "panic attack", and "borderline personality disorder." AR 894. Dr. Herson noted in May 2020, that plaintiff had found a Psychiatric Nurse Practitioner with PeaceHealth who would be able to start treating her mental health conditions. AR 943. Nurse Practitioner Candace Armstrong saw plaintiff (by videoconference appointment) in May and June 2020, and modified her medications in an attempt to treat plaintiff's auditory and visual hallucinations and reduce those symptoms. AR 988-998, 1000-1002, 1008.

Plaintiff started treatment at SeaMar on June 16, 2020. AR 974, 1028-1061-2054. She reported to a counselor at SeaMar (AR 2045-2046) in October 2021, that she was "experiencing visual and auditory hallucinations that are most severe when she feels stressed." In November 2021, after a change in medication, plaintiff stated that

visual hallucinations occurred about 2-3 times per week, and this was an improvement." AR 2059. In January and February 2022, plaintiff reported more visual and audio hallucinations and PTSD symptoms. AR 2071-2072, 2087, 2102. In February 2023, plaintiff was pregnant and reported increased hallucinations both auditory and visual. AR 2121-2122. In July 2023, plaintiff reported that when she was driving "sometimes see the road turn into lava." She also reported that in her home she would see "wallpaper even though I don't have any, and gas coming out of it." AR 2129. The record shows that plaintiff had financial barriers to receiving adequate medication management and psychiatric treatment. *See, e.g.*, AR 2401, 2422-2423 (medical progress notes from 3-17-2023 and 4-14-2023, observing that plaintiff had longstanding mental health diagnoses and financial barriers to psychiatry guidance),

    In some cases, failure to seek treatment or to follow a prescribed course of treatment may be properly relied on by the ALJ as a reason for discounting the claimant's credibility. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (claimant found not disabled where he "did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects."). Yet the ALJ should consider explanations or evidence before drawing inferences from a failure to seek treatment or follow treatment recommendations. *See* Social Security Ruling (SSR) 16-3p; *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 397 F. App'x 288, 290 (9th Cir. 2010).

    Here the ALJ summarized the treatment record both before and after the date last insured and noted that even before plaintiff was able to be treated by a psychiatrist

due to her insurance, her symptoms were monitored by her primary care physician. AR 1425.

Additionally, the ALJ considered plaintiff's improvement with medication. AR 1424-26. Symptoms that can be controlled through treatment and medication "are not disabling." *See Ware v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The ALJ considered the record as a whole, noting that at points where plaintiff was taking medication her symptoms improved. AR 1424-26 (citing AR 665-673 802, 1170, 1360). He also noted that when she stopped taking medications, her symptoms worsened. AR 1426. (citing AR 1117, 1119, 1159). This was a valid reason to discount plaintiff's testimony, supported by substantial evidence.

Plaintiff does not challenge the ALJ's conclusion that there was no corroboration for the frequency or severity of her hallucinations." Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ did not err in not including a limitation regarding the amount of time plaintiff would be off task due to hallucinations because the ALJ properly discredited plaintiff's subjective testimony and there was a lack of evidence in the medical record to support this limitation.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. Therefore, the ALJ's decision is <u>affirmed</u>.

Dated this 17th day of April, 2025.

Theresa L. Fricke
United States Magistrate Judge